**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| BETHANY KOVAL individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) ) | **Case No.: 5-21-cv-00423-D** |
| RALEIGH RESTAURANT CONCEPTS, LLC d/b/a MEN'S CLUB OF RALEIGH, a North Carolina Limited Liability Company; LOWRIE MANAGEMENT LLLP., a Colorado Limited Liability Limited Partnership; SEAN BAKER, an individual; TROY LOWRIE, an individual; DOE MANAGERS 1 through 3; and DOES 4 through 10, inclusive, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION TO LIFT THE STAY AND APPROVAL OF
FLSA SETTLEMENT**

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................................................. 1

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL GROUNDS FOR PLAINTIFF'S CLAIMS ................................................. 2

III.    THE SETTLEMENT AGREEMENT ...................................................................... 3

IV.     STANDARD FOR APPROVAL OF FLSA SETTLEMENTS ................................... 3

V.      APPROVAL OF FLSA SETTLEMENT ............................................................... 4

        A.      Bona Fide Dispute ............................................................................ 4

        B.      Fair and Reasonable Resolution ..................................................... 5

                1.      Plaintiff's Possible Range of Recovery .............................. 5

                2.      The Stage of Proceedings and Amount of Discovery Completed ............... 9

                3.      Seriousness of Litigation Risks Faced by the Parties ................................. 9

                5.      Possibility of Fraud or Collusion ...................................... 10

VI.     THE ATTORNEYS' FEES AND COSTS REQUESTS ARE REASONABLE............................ 10

        A.      FLSA ACTION SETTLEMENTS ALLOW FOR A GREATER RECOVERY OF ATTORNEYS' FEES THAN RULE 23 CLASS ACTION SETTLEMENTS.................... 10

        B.      PLAINTIFF'S ATTORNEYS' FEES TOTALING 45% OF THE SETTLEMENT IS A REDUCTION OF THE LODESTAR AND WOULD THEREFORE BE A REASONABLE AWARD.................................................................................................... 13

VII.    CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bonnette v. California Health & Welfare*,
704 F.2d 1465 (9th Cir.1983) ................................................. 9

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945) ........................................................... 3

*Byrne v. Santa Barbara Hospitality Services, Inc.*,
C.A. No. 17-00527 (C.D. Cal. Dec. 14, 2018) ................................ 12

*Doe 1-2 v. Deja Vu Servs., Inc.*,
No. 2:16-cv-10877, 2017 WL 2629101 (E.D. Mich. June 19, 2017) ............. 11

*Does 1-2 v. Deja Vu Servs., Inc.*,
925 F.3d 886 (6th Cir. 2019) .............................................. 11

*Earls v. Forga Contracting, Inc.*,
No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921 (W.D.N.C. June 9, 2020) ......... 8

*Fegley v. Higgins*,
19 F.3d 1126 (6th Cir. 1994) ............................................... 9

*Fisher v. SD Prot. Inc.*,
948 F.3d 593 (2d Cir. 2020) ................................................ 8

*Gary v. Carbon Cycle Arizona LLC*,
398 F. Supp. 3d 468 (D. Ariz. 2019) ...................................... 10

*Gay Officers Action League v. Puerto Rico*,
247 F.3d 288 (1st Cir.2001) .............................................. 10

*Hart v. RCI Hosp. Holdings, Inc.*,
No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) .......... 11

*Hensley v. Eckerhart*,
461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ...................... 10

*In re TJX Companies Retail Sec. Breach Litig.*,
584 F.Supp.2d 395 (D.Mass. 2008) .......................................... 8

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F.Supp.2d 249 (D.N.H. 2007) ........................................... 8

*In re Visa Check/MasterMoney Antitrust Litig.*,
   297 F.Supp.2d 503 (E.D.N.Y. 2003) ........................................................................... 8

*Kazanjian v. MSM Enterprises, Inc.*,
   No. CIV. 93-227-P-C, 1995 WL 140153 (D.Me. Mar. 15, 1995) .................................. 9

*Lucio–Cantu v. Vela*,
   239 Fed. App'x. 866 (5th Cir.2007) ............................................................................ 9

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ........................................................................... 3, 4

*Marrotta v. Suffolk Cty.*,
   726 F.Supp.2d 1 (D.Mass. 2010) ......................................................................... 10, 11

*Mills v. Cabral*,
   No. CIV.A. 06-10133-RGS, 2010 WL 2553889 (D.Mass. June 18, 2010) ..................... 10

*Morris v. Cumberland Cty. Hosp. Sys., Inc.*,
   No. 5:12-CV-629-F, 2014 WL 12780144 (E.D.N.C. Mar. 26, 2014) ............................. 3

*Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al.*,
   No. 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021) ............................................. 11

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*,
   No. 19-cv-06088-lb, 2020 WL 2494569 (N.D. Cal. May 14, 2020) ............................. 11

*SKF USA Inc. v. Bjerkness*,
   Nos. 08 C 4709, 09 C 2232, 2011 WL 4501395 (N.D. Ill. 2011) ............................... 9

*Tallman v. CPS Sec. (USA), Inc.*,
   23 F.Supp.3d 1249 (D. Nev. 2014) ............................................................................ 8

*Tallman v. CPS Sec. (USA), Inc.*,
   655 F. App'x 602 (9th Cir. 2016) ............................................................................... 8

*Taylor v. Progress Energy, Inc.*,
   493 F.3d 454, 460–461 (4th Cir. 2007) ...................................................................... 3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .......................................................................................... 8

**Statutes**

29 C.F.R. § 531.35 ........................................................................................................ 1, 2

29 U.S.C. § 201, *et seq.*................................................................................................... 1

29 U.S.C. § 203.............................................................................................................. 1, 2

29 U.S.C. § 206................................................................................................................. 1

29 U.S.C. § 216(b)............................................................................................................. 3

29 U.S.C. § 216(c)............................................................................................................. 3

**Rules**

Fed. R. Civ. P. 23 ................................................................................... 1, 7, 8, 9, 10, 11

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

COME NOW plaintiffs Bethany Koval, Kimberlyn Richards, Tyronia, Houston and Mikia Burnette ("Plaintiffs") and by and through their respective undersigned counsel, and hereby move this Court for an order lifting the stay and approving the settlement pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

## I.    INTRODUCTION

Plaintiffs worked as exotic dancers at Defendants' RALEIGH RESTAURANT CONCEPTS, LLC d/b/a MEN'S CLUB OF RALEIGH, a North Carolina Limited Liability Company; LOWRIE MANAGEMENT LLLP., a Colorado Limited Liability Limited Partnership; SEAN BAKER, an individual; TROY LOWRIE (collectively, "Defendants), club, Men's Club of Raleigh. Plaintiff filed her Complaint on October 15, 2021 alleging the following causes of action: (1) Failure to Pay Minimum Wages, 29 U.S.C. § 206; (2) Illegal Kickbacks, 29 C.F.R. § 531.35; (3) Unlawful Taking of Tips, 29 U.S.C. § 203; and (4) Forced Tip Sharing, 29 C.F.R. § 531.35. *See* Dkt. 1. The causes of action were based on the misclassification of Plaintiffs as an independent contractors. Plaintiff Richards opted in to this matter on October 29, 2021. *See* Dkt. 7. Plaintiff Houston opted into this matter on December 1, 2021.  *See* Dkt. 15. Plaintiff Burnette opted into this matter on September 14, 2022. *See* Dkt. 19.

Plaintiffs and Defendants (jointly, the "Parties") filed a Joint Stipulation to Stay Pending Arbitration [Dkt. 16], which was granted on December 7, 2021 [Dkt. 17], and were proceeding in an arbitration each with separate and private arbitrators, as well as engaging in an informal exchange of discovery and settlement discussions. As a result of the exchange of informal discovery and settlement negotiations, the Parties were able to reach a settlement of Plaintiffs' claims in this matter. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 27, Exhibit

("Ex.") 1.

Pursuant to the Agreement, Plaintiff Koval will receive $21,804.22 with the remaining $18,195.78 being allocated to Plaintiff Koval's attorneys' fees ($18,000.00) and costs ($195.78). Pursuant to the Agreement, Plaintiff Richards will receive $5,304.22 with the remaining $4,695.78 being allocated to Plaintiff Richards  attorneys' fees ($4,500.00) and costs ($195.78). Pursuant to the Agreement, Plaintiff Houston will receive $17,954.22 with the remaining $15,045.78 being allocated to Plaintiff Houston attorneys' fees ($14,850.00) and costs ($195.78). Pursuant to the Agreement, Plaintiff Burnette will receive $16,854.22 with the remaining $14,145.78 being allocated to Plaintiff Burnette attorneys' fees ($13,950.00) and costs ($195.78). *See* Kristensen Decl. ¶¶ 28, Exs. 2–6. This amount reflects a favorable outcome for Plaintiffs, far in excess of what would be expected in a similar Fed. R. Civ. P. 23 class action settlement. Furthermore, the fee request is less than Plaintiffs' counsel's lodestar, virtually identical to other approved Fair Labor Standards Act ("FLSA") settlements, and therefore reasonable.

## II.    LEGAL GROUNDS FOR PLAINTIFF'S CLAIMS

Plaintiffs differentiated the types of FLSA claims. The first two types of claims were for failure to pay minimum wage. Plaintiffs also contended that Defendants required her to pay "house fees" or "tip-out" to Men's Club of Raleigh employees. Plaintiffs argued that this forced subsidization of Defendants' club constituted unlawful "kickbacks" in violation of 29 U.S.C. § 203.

Lastly, Plaintiffs also had claims for two types of tipping violations. First, the dancers were "encouraged" to tip the club's employees. The forced tipping, Plaintiffs contended, is also a violation of 29 C.F.R. § 531.35, as it results in the dancers subsidizing the club's payment of wages to other employees. The second form of claimed damages for tips was the price of

individual private dances to customers which was retained by Defendants rather than being paid to Plaintiffs. Plaintiffs alleged these were tips that belonged to them and were improperly taken. The settlement resolves all of Plaintiffs' individual and collective claims against Defendants.

## III. THE SETTLEMENT AGREEMENTS

Pursuant to the Agreements, Defendants have agreed to pay Plaintiffs a gross settlement amount of $114,000.00. Plaintiffs will receive $61,961.90 with the remaining $52,038.10 being allocated to Plaintiffs' attorneys' fees ($51,300.00) and costs ($738.10). *See* Kristensen Decl. ¶¶ 27–28, Exs. 1–6.

## IV. STANDARD FOR APPROVAL OF FLSA SETTLEMENTS

The FLSA provides, in relevant part, that "[a]ny employer who violates the provisions of section 206 . . . of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally are not subject to bargaining, waiver, or modification by contract or private settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are: (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c); or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460–461, 463 (4th Cir. 2007) (discussing need for prior approval from court or Department of Labor of any waiver or release of FLSA claims). "Although there is a presumption in favor of approving a settlement as fair, court review is nevertheless needed to ensure fairness to the parties." *Morris v. Cumberland Cty. Hosp. Sys., Inc.*, No. 5:12-CV-629-F, 2014 WL 12780144, at *1 (E.D.N.C. Mar. 26, 2014).

Although the Fourth Circuit has not set forth specific guidelines for approval of a FLSA settlement, the Eleventh Circuit has, as explained in *Lynn's Food Stores*. "A district court, when reviewing a proposed settlement of a FLSA claim must scrutinize[] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. *Lynn's Food Stores* essentially established four factors for a district court to determine whether to approve a FLSA settlement:

1. Was the settlement achieved in an adversarial context?
2. Was the plaintiff represented by attorneys who can protect their rights?
3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?
4. Is the settlement fair?

*Id.* at 1353–54.

## V. APPROVAL OF FLSA SETTLEMENT

### A. Bona Fide Dispute

The Court should approve the Agreement because it reflects a reasonable compromise of a bona fide dispute regarding Defendants' alleged FLSA liability. There was no collusion in reaching the Agreement. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the Agreement reached was the result of good-faith, arms' length negotiation between the Parties. Plaintiffs' counsel has experience in employment cases and obtained substantial settlements against employers, including against other exotic dance clubs. Plaintiffs' counsel has also settled in excess of fifty individual FLSA claims against strip clubs in the past two years, including during the COVID-19 pandemic. *See* Kristensen Decl. ¶¶ 2–26, 29–38, 41–45, Exs. 7–16, 19–23.

The Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors and whether the dance fees charged by and collected by

the Defendants belonged to the Defendants or was a tip belonging to Plaintiffs. The Parties

engaged in the informal exchange of documents. The Parties were cognizant and aware of each

other's arguments and positions pertaining to employee classification. The Parties participated in

settlement negotiations in good faith. The Parties defended their positions about the disputed

aspects of the case and a resolution was ultimately reached.

Because the Parties disputed these aspects of the case, the purpose of the bona fide

dispute requirement has been satisfied here. *See Lynn's Food Stores*, 679 F.2d at 1353 n.8 ("The

purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime

compensation, or liquidated damages when no actual dispute exists between the parties.").

### B. FAIR AND REASONABLE RESOLUTION

#### 1. *Plaintiff's Possible Range of Recovery*

During the relevant time period, Plaintiff Koval worked for Defendants from December

2020-end October 2021 and 109 shifts, roughly. The club's records, consisting of sign-in sheets

and dancer transaction records by Plaintiff Koval and other exotic dancers demonstrated that

Plaintiff worked approximately 109 shifts or 872 hours in total for Defendants. *See* Kristensen

Decl. ¶ 27.

Plaintiff Koval's claims alleged that she was not paid federal minimum wage for her

work and was entitled to liquidated damages. 872 hours at $7.25 per hour is $6,322.00.

$6,322.00 doubled for liquidated damages is $12,644.00. Plaintiff's federal minimum wage

claim was valued at $12,644.00. Plaintiff also alleged that the "house fees" she paid to the club

to work for Defendants constituted an illegal kickback such that Plaintiff was entitled to

restitution. Defendants' records reflected that Plaintiff paid approximately $1,635.00 in total for

house fees from December 2020-end October 2021. While Plaintiff alleged that she was required

to tip club employees, this was the weakest claim as there was a lack of documentation as to how much Plaintiff tipped and whether it was voluntary or mandatory. For settlement purposes, Plaintiff focused on her strongest claims that she would bring before an arbitrator or jury. *Id.*

Per the Agreement, Plaintiff Koval will receive $$21,804.22 which almost double of what her range of recovery, without needing to engage in protracted litigation, responding to formal discovery, hours of preparing for her deposition, testifying during her deposition, engaging expert witnesses, and preparing for an arbitration hearing or trial.

During the relevant time period, Plaintiff Richards worked for Defendants from February 2021 to end March 2021 and 15 shifts, roughly. The club's records, consisting of sign-in sheets and dancer transaction records by Plaintiff Richards and other exotic dancers demonstrated that Plaintiff worked approximately 15 shifts or 88 hours in total for Defendants. See Kristensen Decl. ¶ 27.

Plaintiff Richards's claims alleged that she was not paid federal minimum wage for her work and was entitled to liquidated damages. 88 hours at $7.25 per hour is $638.00. $638.00 doubled for liquidated damages is $1,276.00. Plaintiff's federal minimum wage claim was valued at $1,276.00. Plaintiff also alleged that the "house fees" she paid to the club to work for Defendants constituted an illegal kickback such that Plaintiff was entitled to restitution. Defendants' records reflected that Plaintiff paid approximately $530.00 in total for house fees from February 2021 to end March 2021. While Plaintiff alleged that she was required to tip club employees, this was the weakest claim as there was a lack of documentation as to how much Plaintiff tipped and whether it was voluntary or mandatory. For settlement purposes, Plaintiff focused on her strongest claims that she would bring before an arbitrator or jury. *Id.*

Per the Agreement, Plaintiff Richards will receive $5,304.22, which is over double of

what her range of recovery would be, without needing to engage in protracted litigation, responding to formal discovery, hours of preparing for her deposition, testifying during her deposition, engaging expert witnesses, and preparing for an arbitration hearing or trial.

During the relevant time period, Plaintiff Houston worked for Defendants from April 2021 to end October 2021 and 102 shifts, roughly. The club's records, consisting of sign-in sheets and dancer transaction records by Plaintiff Houston and other exotic dancers demonstrated that Plaintiff worked approximately 102 shifts or 672 hours in total for Defendants. See Kristensen Decl. ¶ 27.

Plaintiff Houston's claims alleged that she was not paid federal minimum wage for her work and was entitled to liquidated damages. 672 hours at $7.25 per hour is $4,872.00. $4.872.00 doubled for liquidated damages is $9,744.00. Plaintiff's federal minimum wage claim was valued at $9,744.00. Plaintiff also alleged that the "house fees" she paid to the club to work for Defendants constituted an illegal kickback such that Plaintiff was entitled to restitution. Defendants' records reflected that Plaintiff paid approximately $5,105.00 in total for house fees from April 2021 to end October 2021. Plaintiff also received payments from the club, which were a point of dispute. While Plaintiff alleged that she was required to tip club employees, this was the weakest claim as there was a lack of documentation as to how much Plaintiff tipped and whether it was voluntary or mandatory. For settlement purposes, Plaintiff focused on her strongest claims that she would bring before an arbitrator or jury. *Id.*

Per the Agreement, Plaintiff Houston will receive $17,954.22, which is approximately double of what her range of recovery would be, without needing to engage in protracted litigation, responding to formal discovery, hours of preparing for her deposition, testifying during her deposition, engaging expert witnesses, and preparing for an arbitration hearing or

trial.

During the relevant time period, Plaintiff Burnette worked for Defendants from October 2020 to November 2021, with an additional 2 shifts in 2022 for a total of 106 shifts, roughly. Plaintiff Burnette alleges she worked approximately 106 shifts or 848 hours in total for Defendants. See Kristensen Decl. ¶ 27.

Plaintiff Burnette's claims alleged that she was not paid federal minimum wage for her work and was entitled to liquidated damages. 848 hours at $7.25 per hour is $6,148.00. $6.148.00 doubled for liquidated damages is $12,296.00. Plaintiff's federal minimum wage claim was valued at $12,296.00. Plaintiff also alleged that the "house fees" of approximately $1,560.00, she paid to the club to work for Defendants constituted an illegal kickback such that Plaintiff was entitled to restitution. Plaintiff did not have strong records to substantiate her accounting. While Plaintiff alleged that she was required to tip club employees, this was the weakest claim as there was a lack of documentation as to how much Plaintiff tipped and whether it was voluntary or mandatory. For settlement purposes, Plaintiff focused on her strongest claims that she would bring before an arbitrator or jury. *Id.*

Per the Agreement, Plaintiff Burnette will receive $16,854.22, which is approximately thirty-percent over what her range of recovery would be, without needing to engage in protracted litigation, responding to formal discovery, hours of preparing for her deposition, testifying during her deposition, engaging expert witnesses, and preparing for an arbitration hearing or trial.

Moreover, while Plaintiffs could have sought to not settle their claims and proceed to a final hearing or testimony, the uncertainty of Defendants' financial status given the COVID-19 pandemic could have meant that if Plaintiffs obtained awards in their favor, Plaintiffs' chances of

obtaining a recovery months if not years later, and any judgment enforcement would have meant less than what could have been obtained through this result.

Plaintiffs were at all times aware of the risks in deciding whether to reach a settlement and the Agreement is sufficient as a compromise given the expense, delay, and uncertainty of proceeding on an ultimate recovery. *See* Kristensen Decl. ¶ 27, Ex. 1.

### 2. *The Stage of Proceedings and Amount of Discovery Completed*

As this Court is aware, this matter was initially pending in this Court before Plaintiffs' claims were compelled to arbitration. Plaintiff submitted her arbitration demand. Thereafter, the Parties engaged in an informal exchange of discovery, specifically, the production of Defendants' records, including sign-in sheets, dancer tracker spreadsheets, to allow each Plaintiff and their counsel the ability to determine the accuracy of the records and whether there would be any dispute regarding the time worked. While there could have been minor differences regarding the time provided, the discrepancies would have been insignificant that would not have made a significant difference in Plaintiffs' valuation of their respective claims.

### 3. *Seriousness of Litigation Risks Faced by the Parties*

While Plaintiffs and their counsel strongly believe that Plaintiffs were misclassified, there could be no guarantee or certainty that an arbitrator or a jury would find the same. Plaintiffs' potential inabilities and struggles to prove that Defendants' alleged violations were willful or inability/ability to corroborate the number of hours and shifts worked that Plaintiffs claimed were significant risks faced by Plaintiffs. In addition, for Defendants, the fact that Plaintiffs' claims were proceeding in arbitration, each separate and distinct, meant that they could be held liable not just for the four separate arbitrator's fees, but also each respective Plaintiff's award, plus Plaintiffs' attorneys' fees and costs, on top of their own attorneys' fees and costs, that could

have meant a serious financial risk in proceeding with the claims rather than seek a potential resolution. This factor weighs in favor of approving the FLSA settlement.

### 4. *Experience and Views of Counsel and Opinion of Plaintiff*

Plaintiffs' counsel and Defendants' counsel have substantial experience litigating wage and hour cases and handling complex and class actions. Counsel for the Parties knew the strengths and weaknesses of the opposing side's case. Plaintiffs' counsel's substantial experience and judgment resulted in this Settlement as well as Defendants' counsel's deft strategy provided for a fair and reasonable early settlement that would minimimze risks to the Parties and resolve this dispute. Additionally, each and every Plaintiff is aware of their respective settlements and each have agreed to its terms as confirmed by their respective signatures on their respective Agreements. Accordingly, this factor weighs in favor of approval.

### 5. *Possibility of Fraud or Collusion*

The Settlement was the result of extensive pre-suit investigation, review of informal discovery, zealous advocacy on both sides, and substantial arm's-length negotiations between counsel. While Plaintiffs' counsel is receiving payment of reimbursable costs and attorneys' fees from the Settlement, there is nothing out of the ordinary in this arrangement. This factor therefore weighs in favor of approval.

## VI. THE ATTORNEYS' FEES AND COSTS REQUESTS ARE REASONABLE

### A. *FLSA Action Settlements Allow for a Greater Recovery of Attorneys' Fees Than Rule 23 Class Action Settlements*

Plaintiff's request for attorneys' fees is reasonable and in line with many other district court orders granting similar fees in FLSA settlements. FLSA settlements are distinct from Rule 23 class action settlements and, as such, allow for a greater recovery of fees. Several California

district judges (Hon. John F. Walter, Hon. R. Gary Klausner, Hon. James V. Selna, Hon. Jesus G. Bernal) and District Judges around the country have granted similar requests for attorneys' fees for Plaintiff's counsel within the last three years. *See* Kristensen Decl. ¶¶ 2–26, 29–38, 41–45, Exs. 7–16, 19–23.

In Rule 23 class actions, attorneys more often than not seek fees in excess of their lodestar by requesting that the court apply a positive modifier. *See In re Tyco Int'l, Ltd. Multidistrict Litig*., 535 F.Supp.2d 249, 271 (D.N.H. 2007) (approving Rule 23 class action settlement with lodestar multiplied of 2.697); s*ee also In re TJX Companies Retail Sec. Breach Litig*., 584 F.Supp.2d 395, 408 (D.Mass. 2008) (applying a lodestar multiplier of 1.97); *In re Visa Check/MasterMoney Antitrust Litig*., 297 F.Supp.2d 503, 524 (E.D.N.Y. 2003), aff'd sub nom. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96 (2d Cir. 2005) (applying lodestar multiplier of 3.5). By contrast, here, Plaintiffs' counsel merely seeks a negative or inverse multiplier, resulting in an award less than their lodestar. *See* Kristensen Decl. ¶ 28; Exs. 2, 4–5.

FLSA settlements are subject to a different standard and allow for a greater recovery of attorneys' fees than Rule 23 class action settlements in order to encourage attorneys to take on these sorts of wage-and-hour cases. *See Tallman v. CPS Sec. (USA), Inc*., 23 F.Supp.3d 1249, 1267 (D. Nev. 2014), aff'd, 655 F. App'x 602 (9th Cir. 2016) ("there is no requirement that fee awards be proportionate to the monetary recovery, unduly restricting fee awards would discourage attorneys from taking FLSA cases, and a successful FLSA claim vindicates statutory rights, even if it does not result in a substantial monetary recovery."); *Fisher v. SD Prot. Inc*., 948 F.3d 593, 603 (2d Cir. 2020) (holding that a proportionality rule limiting attorney's fees to 33% of total settlement would also be inconsistent with the remedial goals of the FLSA); *see also Earls v. Forga Contracting, Inc*., No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921, at *4

(W.D.N.C. June 9, 2020) (noting that "courts have rejected the notion that [FLSA] fee awards should be proportionately tied to a Plaintiffs' recovery." (quotation omitted)); *Kazanjian v. MSM Enterprises, Inc.*, No. CIV. 93-227-P-C, 1995 WL 140153, at *3 (D.Me. Mar. 15, 1995) ("in an FLSA fee determination, a court should not place undue emphasis on the amount recovered by a plaintiff since the award of fees 'encourages the vindication of congressionally identified policies and rights,' even if the recovery is only nominal.").

Indeed, the public policy encouraging attorneys to take on FLSA cases often results in situations where the attorney's fees surpass the Plaintiff'ss award. *See Bonnette v. California Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir.1983) (affirming $100,000 in attorney fees on a judgment of $18,455 in damages); *SKF USA Inc. v. Bjerkness*, Nos. 08 C 4709, 09 C 2232, 2011 WL 4501395, at *3 (N.D. Ill. 2011) (refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068 because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested); *see also Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (affirming attorney fees of $40,000 on a judgment of $7,680 for overtime compensation); *Lucio–Cantu v. Vela*, 239 Fed. App'x. 866 (5th Cir.2007) (finding no abuse of discretion in award of $51,750 in attorney fees on a recovery of $4,679). In this case however, Plaintiff's attorneys merely seek an amount in fees totaling 45% of the total settlement, which is less than their lodestar. *See* Kristensen Decl. ¶ 28; Exs. 2, 4–5.

Therefore, the Court here should not limit itself in awarding attorney's fees as if this case were a Rule 23 class action. It is not a class action, but instead a collective action with public policy considerations that afford a more generous calculation of fees.

///

///

**B.     Plaintiffs' Attorneys' Fees Totaling 45% of the Settlement Is a Reduction of the Lodestar and Would Therefore Be a Reasonable Award**

It is well settled that a reasonable amount of fees is determined pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) ("[t]o determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method."); *Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL 2553889, at *1 (D.Mass. June 18, 2010) ("[i]n determining an appropriate award of fees and costs under the FLSA, the court employs the lodestar approach."); *Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) (approving FLSA attorneys' fees at lodestar amount).

In this case, Plaintiffs' counsel lodestar exceeds Plaintiff's request for $52,038.10.*See* Kristensen Decl. ¶ 28; Exs. 2, 4–5. However, Plaintiffs' counsel is merely seeking 45% of the total settlement as fees. *See id.* In other words, Plaintiffs' counsel is seeking less than what they would otherwise be entitled to based on the time they have spent litigating this matter. *See id.*

The fees sought in this matter are commensurate with the time and effort exerted to achieve a favorable settlement and the overall skill of Plaintiffs' attorneys. Plaintiffs' counsel is well versed in both FLSA collective actions and Rule 23 class actions and have achieved numerous successful outcomes. Furthermore, Plaintiffs' attorneys' hourly rates are reasonable and are similar to those approved by other district courts throughout the country.

Also, while the lodestar amount is presumed to be a reasonable calculation of attorneys'

fees, it is within the Court's discretion to adjust the lodestar figure. *See Marrotta*, 726 F.Supp.2d at 25. Within the past two years alone, three separate judges in California have granted Plaintiffs' counsel's request to apply a negative modifier to the lodestar in order to achieve a fee award comprising of 45% of the total FLSA settlement. District courts in Florida and Wisconsin have followed suit and also granted Plaintiffs' counsel attorney's fees totaling 45% of the settlement. *See* Kristensen Decl. ¶¶ 2–26, 29–38, 41–45, Exs. 7–16, 19–23.

Ultimately, the FLSA settlements in this case represent a far more favorable outcome for Plaintiff than if they pursued their claims through a Rule 23 class action. By virtue of their sheer size, class actions often lead to a smaller award for each individual plaintiff. In *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015), a similar exotic-dancer wage-and-hour class case settled for roughly $15 million. *See Hart*, 2015 WL 5577713 at *5. However, the Rule 23 class comprised of 2,208 members and each only received on average $4,254.98. *See id.* Similarly, in *Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al*., No. 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021), the district court awarded a net settlement amount of $2,600,000 to an exotic dancer class action. *See* Kristensen Decl. ¶ 39, Ex. 17. However, the class consisted of 650 individuals and the awards averaged out to only $4,000 per class member. *See id*; *see also Roe v. Jose Torres L.D. Latin Club Bar, Inc*., No. 19-cv-06088-lb, 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) (granting preliminary approval of Rule 23 settlement on behalf of exotic dancers that would pay "$836 per class member"); *Doe 1-2 v. Deja Vu Servs., Inc*., No. 2:16-cv-10877, 2017 WL 2629101, at *5 (E.D. Mich. June 19, 2017), aff'd sub nom. *Does 1-2 v. Deja Vu Servs., Inc*., 925 F.3d 886 (6th Cir. 2019) (approving Rule 23 settlement on behalf of exotic dancers, many of whom worked in California, where "the average payment from the cash pool will be around $200"); Kristensen

Decl. at ¶ 40, Ex. 18, *Byrne v. Santa Barbara Hospitality Services, Inc.*, C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec. 14, 2018) (approving settlement proposing to pay 566 claiming class members between $350,884 to $598,453, or average shares of between $620 and $1,057 per participating class member).

## VII.  CONCLUSION

Based on the foregoing, Plaintiffs' respectfully request that the Court grant this Motion in its entirety.

Dated: April 26, 2023

*/s/ Randall J. Phillips*
Randall J. Phillips
North Carolina Bar No. 36125
**CHARLES G. MONNTETT III & ASSOCIATES**
6842 Morrison Boulevard, Suite 100
Charlotte, NC 28211
Telephone: (704) 376-1911
Fax: (704) 376-1921
*rphillips@carolinalaw.com*

John P. Kristensen
California Bar No. 337080
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Blvd.
Beverly Hills, California 90211
Telephone:  (310) 273-1230
Fax:  (310) 858-1063
*Kristensen@cz.law*
(*Special Appearance*)

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing pleading or other document was filed electronically using CM/ECF which will send notification of such filing to counsel for each of the following parties:

Denaa J. Griffin
JACKSON LEWIS P.C.
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Facsimile: (919) 760-6461
Denaa.Griffin@jacksonlewis.com

Allan S. Rubin
JACKSON LEWIS P.C.
2000 Town Center, Suite 1650
Southfield, MI 48075
allan.rubin@jacksonlewis.com

This the 26th day of April, 2023.

s/ *Randall J. Phillips*

Randall J. Phillips
NC State Bar No. 36125
Attorney for Plaintiff

FOR THE FIRM:
**CHARLES G. MONNETT III & ASSOCIATES**
6842 Carnegie Boulevard, Suite 100
Charlotte, NC 28211
(704) 376-1911 Telephone
(704) 376-1921 Facsimile
rphillips@carolinalaw.com
For electronic service only:
electronicservice@carolinalaw.com